```
                    IN THE UNITED STATES DISTRICT COURT

                   FOR THE EASTERN DISTRICT OF CALIFORNIA


S.S. & G., LLC; and NEVADA      )
CITY HOTEL, LLP,                )
                                )
             Plaintiffs,        )
                                )
        v.                      )
                                )
STATE OF CALIFORNIA, a          )
governmental entity; LOWELL     )
ROBINSON, an individual,        )   No. 02:02-cv-2514-GEB-JFM*
ROBINSON & SONS, a California   )
general partnership;            )   ORDER
RIEBE'S AUTOMOTIVE SUPPLY, a    )
California corporation; BART    )
RIEBE, an individual;           )
HOLDREGE & KULL, a California   )
corporation; and DOES 1         )
through 20, inclusive,          )
                                )
             Defendants.        )
_____)
                                )
And Related Actions.            )
_____)
```

Third-party Defendant Newmont Mining Corporation ("Newmont")

moves for summary judgment on Defendant/Third-party Plaintiff Riebe's

Automotive Supply and Bart Riebe's (collectively "Riebe") third-party

---

\*    This matter was determined to be suitable for decision
without oral argument.  L.R. 78-230(h).

1

complaint for contribution under section 113 of the Comprehensive
Environmental Response, Compensation, and Liability Act ("CERCLA"),
42 U.S.C. § 9601-9628.  Newmont argues that Riebe cannot maintain its
third-party action for contribution because Plaintiffs cannot obtain
joint and several liability from Riebe under section 107(a) of CERCLA.
(Newmont's Br. Supp. Summ. J. at 2.)  Alternatively, Newmont argues
that Riebe cannot maintain its third-party action for contribution
under CERCLA because Riebe cannot establish essential elements of the
claim.  (Id.)  Newmont also seeks summary judgment on Riebe's state
law claims for nuisance and trespass.  (Id.)

Plaintiffs' Complaint alleges, *inter alia*, that (1)
hazardous substances were released on a 1.7-acre parcel of property
located at 375 Hollow Way, near Nevada City, California ("Property"),
(2) Plaintiffs are innocent landowners under CERCLA, and (3) Riebe is
jointly and severally liable for response costs Plaintiffs incurred
remediating hazardous substances from the Property.  (Compl. ¶¶ 20-23,
31-38.)  Riebe, in turn, filed a third-party claim alleging, *inter
alia*, that "Newmont is the successor-in-interest to the Northstar
[sic] and Empire Gold Mines in Nevada County, California," and that
these mines are "liable as a generator of hazardous substances which
were processed and disposed of at the Pioneer Reduction Works facility
formerly located immediately to the west of the Property."  (Riebe's
First Am. Countercls., Cross-cls. & Third-party-cls. ¶ 15.a.)

**DISCUSSION**[1]

I.   *Plaintiffs' Claim for Cost Recovery against Riebe*

     A.   <u>S.S. & G.'s Claim for Cost Recovery</u>

Newmont argues that S.S. & G. LLC ("SS&G") cannot maintain a CERCLA claim against Riebe because there is no evidence that SS&G incurred response costs related to the Property.  (Newmont's Br. Supp. Summ. J. at 6 (citing Snegg Depo. at 10:16-11:3; 12:12-14).)[2]  Newmont is granted summary adjudication on SS&G's CERCLA claim because SS&G does not proffer evidence contradicting Snegg's deposition testimony. (Snegg Depo. at  13:12-14.)[3]

     B.   <u>Nevada City Hotel's Claim for Cost Recovery</u>

Newmont argues that Nevada City Hotel, a limited partnership, ("NCH") cannot seek joint and several liability from Riebe because NCH is not an "innocent landowner" under CERCLA. Newmont contends that NCH is not an innocent landowner because it did not conduct its own environmental site assessment when it purchased

---

[1]  "The standards applicable to motions for summary judgment are well known, <u>see, e.g.</u>, <u>Rodgers v. County of Yolo</u>, 889 F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here." <u>Reitter v. City of Sacramento</u>, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

[2]  Newmont's motion to strike Plaintiffs' opposition to Newmont's motion for summary judgment is denied.

[3]  Michael Snegg's declaration that all individual members of SS&G have contributed to response costs related to the Property (Snegg Decl. ¶ 21) is insufficient to establish that SS&G contributed to response costs related to the Property.  <u>See</u> <u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th 523, 538 (2000) ("Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations.") (citations omitted).

the Property from SS&G in 2002.  (Newmont's Br. Supp. Summ. J. at 7.)[4]
To prevail, Newmont must show that it was unreasonable for NCH to rely
upon the 2000 Phase I Environmental Site Assessment ("Site
Assessment") that Defendant Holdrege & Kull ("H&K") prepared when SS&G
purchased the Property from Riebe.  42 U.S.C. § 9601(35)(B); <u>SDP, Inc.
v. Watumull Props. Corp.</u>, No. CIV. 99-1703-AS, 2004 WL 1103023, at *7-
6 (D. Ore. 2004).[5]  Newmont relies on exculpatory language in H&K's
2001 Geotechnical Engineering Report ("Geotechnical Report") stating
that "[H&K's] primary concern regarding the project site is the
presence of existing fill in areas of proposed improvements."
(Newmont Br. Supp. Summ. J. at 8; Newmont Reply Br. at 5-6 (citing
(Thayer Decl. Supp. Summ. J. ¶ 2, Exh. A at 6)).)  However, this
portion of the Geotechnical Report discusses fill in the context of
compaction, not environmental contamination.  (Thayer Decl. Supp.
Summ. J. ¶ 2, Exh. A at 6.)  Indeed, "evaluating the project site for
the presence of hazardous materials" was not within the Geotechnical
Report's scope of service.  (<u>Id.</u> at 9.)  Newmont offers no evidence to
refute the allegations in the Complaint that nothing occurred on the

---

[4]     The principals of SS&G formed NCH to manage the
construction of a hotel at the Property.  (Snegg Decl. ¶¶ 4, 13,
14.)

[5]     Newmont asserts in its reply brief that Riebe lacks
standing to argue that there are genuine issues of material fact
regarding NCH's status as an innocent landowner under CERCLA.
(Newmont's Reply Br. at 4-5 (citing <u>Lawrence v. Crawford</u>, CIV 92-
05115143, 1995 WL 263873, at *2 (Conn. Super. 1995)).)  However,
Riebe does not take a position adverse to Riebe's interest or
contrary to its pleadings by conceding that there are genuine
issues of material fact concerning (1) whether is was reasonable
for NCH to rely on a Phase I Environmental Site Assessment
prepared for SS&G, or (2) whether H&K's Phase I Environmental
Site Assessment was consistent with generally accepted and
customary standards.

Property between the time SS&G acquired it in November 2000 and the time NCH acquired the Property from SS&G in February 2002.  (Compl. ¶ 27; Snegg Decl. ¶ 18.)  The lack of activity at the Property during SS&G's ownership, and the arguably inapposite concern raised in the Geotechnical Report juxtaposed to the specific finding in the Site Assessment, raise genuine issues of material fact as to whether NCH's reliance on the conclusions in the Site Assessment were reasonable.

Alternatively, Newmont argues that the Site Assessment did not constitute "all appropriate inquiry" such that either SS&G or NCH is an innocent landowner.  42 U.S.C. § 9601(35)(B).  To support this argument, Newmont notes that Plaintiffs seek damages against H&K in this action for negligently conducting the Site Assessment. (Newmont's Br. Supp. Summ. J. at 8 (citing Compl. ¶¶ 75-84).)  Newmont also points to the deposition testimony of Riebe's expert, who concludes that H&K deviated from generally accepted and customary standards for the performance of due diligence for property transactions when it prepared the Site Assessment.  (Thayer Decl. Supp. Summ. J. ¶ 4, Exh. C at 2-11.)  However, H&K produced an expert who concludes that "in performing the Environmental Site Assessment, [H&K] exercised a level of care in accordance with generally accepted and local standards of professional practice in effect at the time." (Jermstad Disclosure & Report ¶ 6, Exh. A at 9.)  Thus, there is a genuine issue of material fact regarding the adequacy of the Site Assessment that prevents Newmont from obtaining summary adjudication on NCH's status as an innocent landowner.  See Dorn v. Burlington N. Santa Fe R.R. Co., 397 F.3d 1183, 1196 (9th Cir. 2005).

II.  *Newmont's Liability under CERCLA*

     A.  <u>Arrangement for the Disposal of Hazardous Substances</u>

     Newmont asserts that it cannot be held liable under CERCLA for the processing of sulphurets from the North Star and Empire Mines (collectively "Mines") because those sulphurets were "valuable products," rather than "waste materials."  (Newmont's Br. Supp. Summ. J. at 11.)  Newmont's expert describes the role of sulphurets from the Mines:

> In the early years of the operation of both the Empire and North Star mills, the ore was roasted, crushed in stamp mills, and subjected to amalgamation, whereby the free gold in the ore combined with mercury and was recovered as an amalgam.  This was heated; the mercury was recovered for re-use by evaporation and condensation, and the gold remained as the valuable product.  The sulphurets, which contained about 20% of the gold in the ore, did not respond to amalgamation, and were lost to the mill tailings along with the waste minerals such as quartz.  In the early 1860's, several different types of equipment were introduced to separate the sulphurets from those tailings, culminating in the application of the Frue vanner, which recovered a sulphuret concentrate that contained about 65% of that gold previously lost.  That gold was initially recovered by a custom chlorination plant, and later, after the cyanidation process was introduced into the mills, by recycling the concentrate within the amalgamation and cyanidation sections.  In both cases, the recovery of the sulphurets became an essential part of the operation, and added to the revenues of the companies.

(Thayer Decl. Supp. Summ. J. ¶ 6, Exh. E at 3.)  Pioneer Reduction Works ("PRW"), a chlorination plant, issued receipts from the late 1890's indicating that it purchased sulphurets from the "North Star Mine" and the "Original Empire Mine."  (Thayer Decl. Supp. Summ. J. ¶ 5, Exh. D.)

1    Whether the Mines' sale of sulphurets to the PRW constitutes

2  the arrangement for the disposal of hazardous substances depends on

3  whether "the substance had the characteristic of waste . . . at the

4  point at which it was delivered to another party." Catellus Dev.

5  Corp. v. United States, 34 F.3d 748, 752 (9th Cir. 1994).  "A by-

6  product of a metallurgical process, if sold, can be a product for

7  purposes of one and waste for purposes of the other." Louisiana Pac.

8  v. ASARCO, Inc., 24 F.3d 1565, 1575 (9th Cir. 1994), cited in Catellus

9  Dev., 34 F.3d at 753.  At the time the Mines sold the sulphurets to

10 PRW, the sulphurets "were lost to the mill tailings along with the

11 waste minerals such as quartz."  (Thayer Decl. Supp. Summ. J. ¶ 6,

12 Exh. E at 3.)  Consequently, summary adjudication on the issue of

13 Newmont's liability as an arranger for disposal of wastes is precluded

14 because a genuine issue of material facts exists as to whether the

15 sulphurets were wastes.  Cf. ASARCO, 24 F.3d at 1575 (affirming a

16 district court finding that slag from a smelter was waste even though

17 the slag was sold to a timber company and put to productive use

18 because slag was a "by-product[] with a nominal commercial value," and

19 "[the generator] wanted to get rid of" the slag).[6]

20    B.   Causation

21    Newmont asserts that there is no evidence that sulphurets

22 processed at the PRW caused the contaminated (purple) soil at the

23 Property.  (Newmont's Br. Supp. Summ. J. at 11.)  However, Riebe's

24

25    [6]    Although Newmont relies on 3550 Stevens Creek Assocs.
   v. Barclays Bank of Cal., 915 F.2d 1355, 1361-62 (9th Cir. 1990),
26 that reliance is misplaced because Stevens Creek "'involved
   products that were produced as the producers' principal business
27 products, not by-products that the producers had to get rid of.'"
   ASARCO, 24 F.3d at 1575 n. 6, quoted in Catellus Dev., 34 F.3d at
28 751.

expert opines that the sulphurets processed at the PRW produced a
purple waste containing the hazardous substances found in the purple
soils at the Property.  (Krasnoff Depo. 16:5-17:15; 18:3-6; 19:8-10.)
Further, Riebe's expert opines that the contaminated soil is located
beneath the fill.  (Id. at 26:2-21; 27:4-15; 28:3-29:4.)  Therefore,
there is a genuine issue of material fact regarding causation that
precludes granting summary judgment.

### C.   Disposal at the Property

Newmont argues that there is no evidence that the PRW
disposed of hazardous substances at the Property because the PRW's
contamination of "the adjacent Property does not impose liability on
any party who allegedly disposed of or treated materials at the PRW."
(Newmont's Br. Supp. Summ. J. at 12.)  Alternatively, Newmont argues
that the PRW chlorination facility was located more than 100 yards
away from the Property in the 1890's when the Mines sold sulphurets to
the PRW, and that "Riebe[] has produced no evidence that the Mines
sold sulphurets to the PRW after [the PRW relocated to an area
adjacent to the Property]."  (Id.) (emphasis in original).  Newmont's
first argument is unpersuasive because the Mines may be liable under
CERCLA as arrangers for disposal even if they did not have "continued
ownership or control of [the sulphurets]."  Catellus Dev., 34 F.3d at
752.

Newmont's second argument requires that an inference be
drawn in its favor: the PRW disposed of all waste material deriving
from the Mines' sulphurets at a "waste dump" that existed north of the
former chlorination plant location.  However, all reasonable
inferences must be drawn in favor of Riebe.  Eastman Kodak Co. v.
Image Tech. Servs., Inc. 504 U.S. 451, 456 (1992).  It is reasonable

to infer that the Mines sold sulphurets to the PRW on more than the
two occasions documented by the receipts from the late 1890's because
"the recovery of the sulphurets became an essential part of the
operation, and added to the revenues of the [Mines]." (Thayer Decl.
¶ 6, Exh. E at 3.)  Further, it is reasonable to infer that the PRW
disposed of wastes from the chlorination process near the Property,
because the chlorination works facility was relocated adjacent to the
Property after 1910.  (Thayer Decl. ¶ 6, Exh. E at 2; Krasnoff Decl.
¶¶ 3-4, Exh. B at 3-4.)  Newmont's expert states that "there was no
reason to ship sulphuret concentrates after the addition in 1910 or
1911 of the cyanidation process at the two Empire mills." (Thayer
Decl. ¶ 6, Exh. E at 2.)  This statement is consistent with the
reasonable inference that Empire mine sold sulphurets to the PRW
sometime *after* the PRW relocated its plant to an area adjacent to the
Property.  (Thayer Decl. ¶ 6, Exh. E at 2.)

   D. <u>Successor Liability</u>

   Newmont contends that it is not the successor in interest to
the Empire Mine Company ("Empire") because Newmont merely purchased
Empire's real and personal property. (Newmont's Br. Supp. Summ. J. at
12-13.)  Newmont supports this argument by proffering a 1929 agreement
that was purportedly entered into between "The Empire Mines" and
"Empire Star Mines Company, Limited."  (Thayer Decl. ¶ 9, Exh. H.)
Under the terms of the agreement, "The Empire Mines" sells and conveys
to Newmont's nominee "all of the real and personal property making up
what is commonly known as the 'Empire Mine' in the Grass Valley Mining
District."  (<u>Id.</u>)  However, the copy of the agreement submitted with
Newmont's motion was not executed by "The Empire Mines."  (<u>Id.</u>)
Consequently, Newmont fails to show that Riebe lacks evidence to

support its assertion that Newmont is the successor-in-interest to Empire. <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

III. *Riebe's State Law Claims for Nuisance and Trespass*

Riebe does not dispute Newmont's position that Riebe has no standing to assert claims for nuisance and trespass against Newmont, and therefore summary adjudication of those claims is granted in Newmont's favor.  (Riebe's Br. Opp'n Summ. J. at 2.)

**CONCLUSION**

In conclusion, Newmont's motion for summary judgment on Riebe's claim under section 113 of CERCLA for contribution is denied. Newmont's motion for summary adjudication on Riebe's state law claims for nuisance and trespass is granted.  Newmont is granted summary adjudication on SS&G's CERCLA claim.

IT IS SO ORDERED.

Dated:  August 19, 2005

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge